United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUBEN ROMERO, et al.,

        Plaintiffs,

    v.

NOKIA, INC., et al.,

        Defendants.

_____/

No. C 12-6260 PJH

**ORDER GRANTING MOTION TO DISMISS**

    Defendants' motion to dismiss came on for hearing before this court on August 14, 2013. Plaintiff Ruben Romero ("plaintiff") appeared through his counsel, Mark Kindall and Michael Strimling. Defendants Nokia, Inc., et al. ("defendants") appeared through their counsel, H. Douglas Hinson. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion as follows.

**BACKGROUND**

    Plaintiff brings this ERISA suit on behalf of himself, the Nokia Retirement Savings and Investment Plan ("the plan"), and a class of all participants in the plan for whose individual accounts the plan invested in the Nokia Stock Fund ("the fund") from January 19, 2012 through the present. The defendants in the case are Nokia, Inc.[1]; Nokia Retirement Savings and Investment Plan Committee (along with individual committee members Billie Hartless, Brian Miller, Arto Sirvio, Mario Viamin, Bob Burns, Denise Doyle, Kate Harmon, and Susan McFarlane; and plan administrator Linda Fonteneaux); and members of the Nokia board of directors (Chris Weber, Oliver Puech, Todd D. Leitstein, Benjamin C.

---

[1] Nokia, Inc. is the U.S. subsidiary of the Finnish parent company, Nokia Corp. This order will refer to the U.S. company as "Nokia" (or "Nokia U.S.," as used in the complaint), and will refer to the parent company as "Nokia Corp."

United States District Court

For the Northern District of California

1    Adams; along with Mario Viamin and Arto Sirvio (who are also members of the plan

2    committee)).  Plaintiff asserts three causes of action (labeled as "counts"): (1) failure to

3    prudently and loyally manage the plan and assets of the plan; (2) failure to monitor

4    fiduciaries; and (3) co-fiduciary liability.

5            Plaintiff's central allegation is that it was imprudent for defendants to (1) permit the

6    plan to offer the fund as an investment option, (2) permit the plan to invest in the fund, and

7    (3) permit the fund to invest in Nokia company stock.  Plaintiff alleges that Nokia stock was

8    an "extremely risky investment," and points to the fact that Nokia's stock "once traded at

9    over $54 per share," but was trading at $4-5 per share in January 2012 (the beginning of

10   the class period).  Complaint, ¶ 41.  Plaintiff alleges that defendants "knew or should have

11   known that the company was in dire circumstances."  Id., ¶ 3.  The complaint focuses on a

12   memo written by Nokia's president and CEO (Stephen Elop), which was published in the

13   Wall Street Journal on February 9, 2011.  This memo (referred to as the "burning platform"

14   memo) described the troubles faced by Nokia, focusing on its failure to adapt to the new

15   smartphone market that was starting to become dominated by the iPhone and Android

16   devices.  Id., ¶ 46.  Plaintiff also points to a number of "industry analyst" comments after

17   the "burning platform" memo, predicting that Nokia was likely to go bankrupt, as evidence

18   that Nokia stock was an imprudent investment during the class period.  See, e.g., id., ¶¶

19   47, 49, 50, 53, 54, 58.  Finally, plaintiff notes that Nokia suffered large drops in its earnings

20   and stock price, which led to more pessimistic predictions regarding its prospects.

21          Based on these facts, plaintiff alleges that the plan committee members (referred to,

22   along with Nokia U.S., as the "prudence defendants") acted imprudently by allowing the

23   plan to invest in Nokia stock, by actually investing in Nokia stock, by failing to investigate

24   the prudence of investing in Nokia stock, and by failing to divest the plan from Nokia stock.

25   Plaintiff's first cause of action is asserted against those "prudence defendants" for "failure

26   to prudently and loyally manage the plan and assets of the plan."  Plaintiff's second cause

27   of action, for "failure to monitor fiduciaries," is asserted against Nokia and its board of

28   directors (referred to as the "monitoring defendants"), and alleges that the monitoring

2

United States District Court

For the Northern District of California

1   defendants failed to ensure that the fiduciaries were aware of the risks of investing in Nokia

2   stock, and failed to remove those fiduciaries after they continued to invest in Nokia stock.

3   Finally, plaintiff's third cause of action is asserted against all defendants, and alleges co-

4   fiduciary liability based on the defendants' alleged knowledge of the breach and failure to

5   remedy it, knowing participation in the breach, and/or enablement of the breach.

**DISCUSSION**

6

7   A.      Legal Standard

8           A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

9   alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

10  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

11  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for

12  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

13  requirements of Federal Rule of Civil Procedure 8.

14          Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

15  the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Specific

16  facts are unnecessary – the statement need only give the defendant "fair notice of the claim

17  and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell

18  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are

19  taken as true. Id. at 94.  However, a plaintiff's obligation to provide the grounds of his

20  entitlement to relief "requires more than labels and conclusions, and a formulaic recitation

21  of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and

22  quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a

23  right to relief above the speculative level." Id.

24          A motion to dismiss should be granted if the complaint does not proffer enough facts

25  to state a claim for relief that is plausible on its face.  See id. at 558-59. "[W]here the well-

26  pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

27  the complaint has alleged – but it has not show[n] – that  the pleader is entitled to relief."

28  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

United States District Court

For the Northern District of California

1    In addition, when resolving a motion to dismiss for failure to state a claim, the court

2    may not generally consider materials outside the pleadings.  Lee v. City of Los Angeles,

3    250 F.3d 668, 688 (9th Cir. 2001).  There are several exceptions to this rule.  The court

4    may consider a matter that is properly the subject of judicial notice, such as matters of

5    public record.  Id. at 689; see also  Mack v. South Bay Beer Distributors, Inc., 798 F.2d

6    1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the

7    complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion

8    to one for summary judgment).  Additionally, the court may consider exhibits attached to

9    the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542,

10   1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all

11   parties as authentic.  See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th

12   Cir. 2002).

13   B.    Legal Analysis

14       As mentioned above, plaintiff's first cause of action is asserted against the

15   "prudence defendants," and alleges that those defendants breached their fiduciary duties to

16   "prudently and loyally manage the plan and assets of the plan."  As a threshold matter, the

17   parties dispute whether these "prudence defendants" are entitled to the "presumption of

18   prudence" that was adopted by the Ninth Circuit in Quan v. Computer Sciences Corp., 623

19   F.3d 870, 881 (9th Cir. 2010).  The Quan court held that when "plan terms require or

20   encourage the fiduciary to invest primarily in employer stock," any such investment is

21   presumed to be prudent under ERISA.  Id.  To overcome that presumption, a plaintiff must

22   "make allegations that clearly implicate the company's viability as an ongoing concern or

23   show a precipitous decline in the employer's stock combined with evidence that the

24   company is on the brink of collapse or is undergoing serious mismanagement."  Id. at 882.

25   The Quan court specifically held that a plaintiff must do more than simply allege that the

26   company's stock was not a "prudent" investment, or that defendants ignored a decline in

27   stock price.  Id.  Instead, plaintiff must show "publicly known facts that would trigger the

28   kind of careful and impartial investigation by a reasonable fiduciary that the plan's fiduciary

4

United States District Court
For the Northern District of California

1    failed to perform." Id.  If, on the other hand, "there is room for reasonable fiduciaries to

2    disagree as to whether they are bound to divest from company stock, the abuse of

3    discretion standard protects a fiduciary's choice not to divest." Id.  Quan acknowledged

4    that there is no bright-line rule about the kind of evidence needed to rebut the presumption

5    of prudence, but held that "the burden to rebut the presumption varies directly with the

6    strength of a plan's requirement that fiduciaries invest in employer stock." Id. at 883.  If the

7    plan terms "require or encourage" the fiduciary to invest primarily in employer stock, then

8    the presumption serves as a "substantial shield" from liability.  Id. at 882.  But the more

9    discretion the fiduciary has to invest in other holdings, "the more his decisions will be

10   subject to judicial scrutiny."  Id. at 883.

11          Plaintiff disputes that Quan's presumption of prudence applies, arguing that the plan

12   terms in this case do not actually "require or encourage" the fiduciary to invest primarily in

13   Nokia stock, and instead are "ambiguous concerning the fiduciaries' authority."  While

14   plaintiff concedes that the plan itself does state that Nokia stock "shall" be offered as an

15   investment option, and may only be removed by amendment to the plan, plaintiff argues

16   that this language was newly inserted in 2011, "apparently with the intent to take advantage

17   of the presumption of prudence articulated by the Ninth Circuit in Quan."  Dkt. 36 at 6, n.6.

18   Plaintiff then notes that the "trust agreement" between Nokia U.S. and the plan trustee,

19   which is incorporated into the plan terms, imposes a duty to "continually monitor the

20   suitability of acquiring and holding" Nokia stock.  See Complaint, ¶ 24.  Plaintiff thus argues

21   that the trust agreement's language precludes the application of the presumption of

22   prudence, and that the "normal prudent man standard" applies to defendants' investment

23   decisions.

24          The court disagrees with plaintiff, and finds that the Quan presumption of prudence

25   does apply in this case.  While the plan terms may very well have been amended, as

26   plaintiff speculates, "with the intent to take advantage" of that presumption, defendants'

27   motives in making that amendment are irrelevant to the court's analysis.  The court's review

28   is limited to whether the terms themselves actually do "require or encourage" the fiduciaries

United States District Court

For the Northern District of California

1    to invest primarily in Nokia stock.  And because those terms provide that the "plan shall

2    include the company stock fund," the court finds that they do "require or encourage"

3    investment in Nokia stock, thus triggering the presumption of prudence.  See also Taveras

4    v. UBS, 708 F.3d 436 (2d Cir. 2013) (finding the word "shall" to require fiduciary to offer

5    common stock); Rinehart v. Akers, 2013 WL 3491281 (2d Cir. July 15, 2013) (same);

6    compare with Harris v. Amgen, 717 F.3d 1042, 1053 (9th Cir. 2013) (finding that the word

7    "may" does not trigger the presumption).

8         Despite arguing the presumption of prudence does not apply, plaintiff argues, in the

9    alternative, that the complaint "allege[s] sufficient facts to overcome any presumption."

10   Plaintiff notes that, under Quan, he must present allegations that either (1) clearly implicate

11   the company's viability as an ongoing concern, or (2) show a precipitous decline in the

12   employer's stock, combined with evidence that the company is on the brink of collapse or is

13   undergoing serious mismanagement.  623 F.3d at 882.  Plaintiff does not specify which of

14   these two prongs is satisfied by the complaint's allegations, and instead appears to

15   proceed under both prongs - arguing that Nokia stock experienced a "precipitous decline,"

16   and also arguing that the "employer company's viability" was "credibly implicated."  The

17   court will thus look at all of the factual allegations presented by plaintiff, and determine

18   whether they satisfy either part of the Quan test.

19        Plaintiff first points to the decline in Nokia's stock price that occurred after Apple's

20   introduction of the iPhone in 2007.  However, plaintiff makes clear that he "has not alleged

21   that Nokia's stock was an imprudent investment during the entire period of the company's

22   decline."  Instead, plaintiff has limited the putative class period to January 19, 2012 to the

23   present, arguing that "by the beginning of 2012," Nokia's decline was "so marked," and its

24   financial position "so dire," that investment in company stock was imprudent.  Plaintiff

25   argues that Nokia's stock price had dropped from $54, in 2007[2], to between $4-5 at the

26   _____

27        [2]The court notes that plaintiff's figures appear to be inaccurate, as Nokia's highest stock price in 2007 was actually $42.44 (on November 7, 2007).  Not since 2000 has Nokia stock
28   been priced at $54.

United States District Court
For the Northern District of California

1    beginning of the class period – a decline of about 90 percent.  Nokia's stock price fell even

2    further during the class period, to a low of $1.76, before climbing back to $3.48 during the

3    briefing of this motion.  Plaintiff claims that this is "clearly evidence of a 'precipitous decline'

4    in the price of the company stock."  Defendants, on the other hand, argue that only the

5    stock price decline that occurred during the class period is relevant to the "prudence"

6    analysis.  By defendants' logic, Nokia's stock price fell only 31 percent – from a class-

7    period peak of $5.80 (on February 24, 2012) to a closing price of $3.98 at the time that the

8    reply brief was filed – which is not a sufficiently "precipitous" decline to rebut the

9    presumption of prudence.

10           Neither party presents any binding authority regarding the relevant time period for

11   assessing whether the stock price drop was "precipitous," and instead, both parties appear

12   to be cherry-picking their dates.  Defendants would have the court ignore all stock price

13   fluctuations that occurred before the first day of the class period.  But any assessment of

14   whether investing in Nokia's stock was "prudent" as of January 19, 2012 would necessarily

15   involve at least some consideration of historical data, as prudence is not determined in a

16   vacuum.  However, plaintiff is also cherry-picking his dates, arguing that the court should

17   look all the way back to the peak of Nokia's stock price, even though the putative class

18   period did not begin until over four years later.  The court further notes that plaintiff appears

19   to have strategically chosen the class period dates in order to avoid the holdings of the

20   Southern District of New York and the Second Circuit (in a similar Nokia ERISA case), both

21   of which found that investing in Nokia stock was not imprudent between September 2008

22   and September 2011 (when the case was dismissed).  See In re Nokia ERISA Litigation,

23   2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) (dismissing case for failure to state a claim for

24   breach of the duty of prudence); Majad ex rel. Nokia Retirement Sav. and Inv. Plan v.

25   Nokia, Inc., 2013 WL 3111263 (2d Cir. 2013) (affirming dismissal).  His gamesmanship

26   aside, plaintiff is permitted to argue that, even if investing in Nokia stock was prudent

27   between 2008 and 2011 (as the Southern District and the Second Circuit found), it became

28   imprudent as of January 2012.  And plaintiff is permitted to cite at least some pre-2012

7

United States District Court
For the Northern District of California

1  evidence to support that argument.

2  However, limiting the putative class period to January 2012 onwards creates a

3  different problem for plaintiff – the court must look only at whether investing in Nokia stock

4  was prudent in or after January 2012, and no earlier.  And the court finds that, by January

5  2012, most of the damage had already been done to Nokia, and the company was already

6  on the road to re-stabilizing itself.  As plaintiff points out, Nokia admittedly failed to adapt to

7  changes in the cellular phone market that were brought about by the introduction of the

8  iPhone in 2007.  It "missed big trends," and failed to introduce a smartphone that could

9  compete with Apple and Android phones.  The February 2011 "burning platform" memo,

10  quoted extensively in plaintiff's complaint, makes this same point – conceding that Nokia

11  was "years behind" its competitors, and that it was "going to have to decide how [to] either

12  build, catalyze, or join" a smartphone ecosystem.  Read carefully, the "burning platform"

13  memo was not a warning that a strong company was about to collapse, it was an

14  acknowledgment that the company was suffering and that changes were needed.  And

15  indeed, later that same month (and critically, <u>before</u> the start of the class period), Nokia

16  announced a partnership with Microsoft's Windows-based smartphone platform.  Thus, by

17  January 2012, it was reasonable for the prudence defendants to view the Windows

18  partnership as the correct response to the burning platform memo and as a signal that the

19  worst was behind them, making it prudent to hold the company stock (rather than selling

20  the stock at its near-low point).  Even if the court were to assume that the drop in Nokia's

21  stock price was indeed "precipitous," plaintiff's allegations do not support the finding that

22  Nokia was on the "brink of collapse" or "undergoing serious mismanagement" as of January

23  2012.  Nor do plaintiff's allegations support the finding that Nokia's viability was "clearly

24  implicated" as of January 2012.  If anything, Nokia was in much more dire straits before the

25  class period started, and by January 2012, had already taken steps to correct any previous

26  "mismanagement."  While the effects of Nokia's failure to adapt were still being felt in 2012

27  (including the declining stock price, as well as falling earnings forecasts, a lowering of its

28  bond rating, and job losses), it was not an abuse of discretion for the plan's fiduciaries to

8

United States District Court

For the Northern District of California

1    view these effects as transition costs, and to believe that Nokia would re-stabilize itself after

2    fully adopting the Windows platform.[3]

3           Quan is instructive here, as the plaintiffs in that case attempted to overcome the

4    presumption of prudence by pointing to material weaknesses in the company's stock option

5    and accounting practices, which led to a SEC inquiry and a one-day 12% drop in stock

6    price.  However, the Ninth Circuit held that the plaintiffs failed to overcome the presumption

7    because it was not "unreasonable for the fiduciaries to believe that [the company] would

8    overcome its problems."  623 F.3d at 884. Similarly, as of January 2012, it was not

9    unreasonable for defendants to believe that Nokia would overcome its problems, and the

10   court finds that plaintiff has not alleged sufficient facts to overcome the Quan presumption

11   of prudence, under either prong of the test.  Thus, defendants' motion to dismiss plaintiff's

12   claim for breach of the duty of prudence is GRANTED.  Plaintiff also asserts a claim for

13   breach of the duty of loyalty, but defendants argue that this theory "hinges entirely" on the

14   prudence-based allegations, and plaintiff does not challenge that argument, nor does he

15   present any separate allegations regarding any loyalty breach.  Thus, the court also

16   GRANTS defendants' motion to dismiss plaintiff's claim for breach of the duty of loyalty,

17   and DISMISSES plaintiff's first cause of action in its entirety.  Because the court finds that

18   the defects of the complaint cannot be cured by amendment, the dismissal is with

19   prejudice.

20          Plaintiff's second cause of action is for "failure to monitor fiduciaries," and alleges

21   that the "monitoring defendants" failed to ensure that the plan fiduciaries were aware of the

22   risks of investing in Nokia stock, and failed to remove those fiduciaries after they continued

23   to invest in Nokia stock.  While plaintiff correctly argues that the duty to monitor is separate

24   from the duty to prudently and loyally manage the plan assets, plaintiff has not alleged

25   separate facts underlying this claim.  Instead, the factual allegations supporting this cause

26   _____

27          [3]In fact, on September 3, 2013, Nokia's phone business was purchased by Microsoft,
     and its stock jumped to over $6 per share.  This latest development further undermines any
28   claim by plaintiff that Nokia's viability was threatened, or that it was on the brink of collapse.

9

of action are indeed dependent on the prudence defendants' alleged failure to prudently and loyally manage the plan's assets.  For instance, the complaint alleges that the monitoring defendants breached their monitoring duties by "standing idly by as the plan suffered enormous losses as a result of their appointee's imprudent actions and inaction with respect to company stock," by "failing to ensure that the monitored fiduciaries appreciated the true extent of the risks of investing in the company stock," and by "failing to remove appointees whose performance was inadequate in that they continued to permit the plan to make and maintain investments in the company stock despite the practices that rendered company stock an imprudent investment during the class period."  Complaint, ¶ 103.  Essentially, plaintiff assumes a breach by the prudence defendants, then claims that any breach must have resulted from a failure to monitor.  Plaintiff does not present any specific facts regarding the monitoring process or how it was deficient.  In other words, while a "failure to monitor" claim will not always be dependent on a "failure to prudently/loyally manage" claim, plaintiff's complaint is pled in such a way that makes his "failure to monitor" claim so dependent.  Because the court has already found that plaintiff has failed to state a claim for failure to prudently/loyally manage the plan's assets, and because plaintiff alleges no new facts regarding the alleged failure to monitor, the court GRANTS defendants' motion to dismiss plaintiff's second cause of action.  And because the court finds that the defects of the complaint cannot be cured by amendment, the dismissal is with prejudice.

Finally, plaintiff's third cause of action is for co-fiduciary liability, and is necessarily dependent on at least one underlying breach of fiduciary duty.  Because the court has found that the complaint fails to state a claim for breach of the duties of prudence and loyalty, and fails to state a claim for breach of the duty to monitor, the court finds that defendant's motion to dismiss plaintiff's third cause of action must be GRANTED, and the claim is dismissed with prejudice.

Defendants' request for judicial notice is GRANTED as to exhibits 1-5, as the subject matter of those documents is referenced by the complaint, but DENIED as to exhibits 6-9.

**IT IS SO ORDERED.**

Dated: October 15, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge