UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUBEN ROMERO, et al.,

    Plaintiffs,

    v.

NOKIA, INC., et al.,

    Defendants.

_____/

No. C 12-6260 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendants' motion to dismiss came on for hearing before this court on August 14, 2013. Plaintiff Ruben Romero ("plaintiff") appeared through his counsel, Mark Kindall and Michael Strimling. Defendants Nokia, Inc., et al. ("defendants") appeared through their counsel, H. Douglas Hinson. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion as follows.

## BACKGROUND

Plaintiff brings this ERISA suit on behalf of himself, the Nokia Retirement Savings and Investment Plan ("the plan"), and a class of all participants in the plan for whose individual accounts the plan invested in the Nokia Stock Fund ("the fund") from January 19, 2012 through the present. The defendants in the case are Nokia, Inc.[1]; Nokia Retirement Savings and Investment Plan Committee (along with individual committee members Billie Hartless, Brian Miller, Arto Sirvio, Mario Viamin, Bob Burns, Denise Doyle, Kate Harmon, and Susan McFarlane; and plan administrator Linda Fonteneaux); and members of the Nokia board of directors (Chris Weber, Oliver Puech, Todd D. Leitstein, Benjamin C.

---

[1] Nokia, Inc. is the U.S. subsidiary of the Finnish parent company, Nokia Corp. This order will refer to the U.S. company as "Nokia" (or "Nokia U.S.," as used in the complaint), and will refer to the parent company as "Nokia Corp."

Adams; along with Mario Viamin and Arto Sirvio (who are also members of the plan committee)). Plaintiff asserts three causes of action (labeled as "counts"): (1) failure to prudently and loyally manage the plan and assets of the plan; (2) failure to monitor fiduciaries; and (3) co-fiduciary liability.

Plaintiff's central allegation is that it was imprudent for defendants to (1) permit the plan to offer the fund as an investment option, (2) permit the plan to invest in the fund, and (3) permit the fund to invest in Nokia company stock. Plaintiff alleges that Nokia stock was an "extremely risky investment," and points to the fact that Nokia's stock "once traded at over $54 per share," but was trading at $4-5 per share in January 2012 (the beginning of the class period). Complaint, ¶ 41. Plaintiff alleges that defendants "knew or should have known that the company was in dire circumstances." Id., ¶ 3. The complaint focuses on a memo written by Nokia's president and CEO (Stephen Elop), which was published in the Wall Street Journal on February 9, 2011. This memo (referred to as the "burning platform" memo) described the troubles faced by Nokia, focusing on its failure to adapt to the new smartphone market that was starting to become dominated by the iPhone and Android devices. Id., ¶ 46. Plaintiff also points to a number of "industry analyst" comments after the "burning platform" memo, predicting that Nokia was likely to go bankrupt, as evidence that Nokia stock was an imprudent investment during the class period. See, e.g., id., ¶¶ 47, 49, 50, 53, 54, 58. Finally, plaintiff notes that Nokia suffered large drops in its earnings and stock price, which led to more pessimistic predictions regarding its prospects.

Based on these facts, plaintiff alleges that the plan committee members (referred to, along with Nokia U.S., as the "prudence defendants") acted imprudently by allowing the plan to invest in Nokia stock, by actually investing in Nokia stock, by failing to investigate the prudence of investing in Nokia stock, and by failing to divest the plan from Nokia stock. Plaintiff's first cause of action is asserted against those "prudence defendants" for "failure to prudently and loyally manage the plan and assets of the plan." Plaintiff's second cause of action, for "failure to monitor fiduciaries," is asserted against Nokia and its board of directors (referred to as the "monitoring defendants"), and alleges that the monitoring

defendants failed to ensure that the fiduciaries were aware of the risks of investing in Nokia stock, and failed to remove those fiduciaries after they continued to invest in Nokia stock. Finally, plaintiff's third cause of action is asserted against all defendants, and alleges co-fiduciary liability based on the defendants' alleged knowledge of the breach and failure to remedy it, knowing participation in the breach, and/or enablement of the breach.

**DISCUSSION**

A.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are taken as true. Id. at 94.  However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that  the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

3

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). There are several exceptions to this rule. The court may consider a matter that is properly the subject of judicial notice, such as matters of public record. Id. at 689; see also Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all parties as authentic. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

B.   Legal Analysis

As mentioned above, plaintiff's first cause of action is asserted against the "prudence defendants," and alleges that those defendants breached their fiduciary duties to "prudently and loyally manage the plan and assets of the plan." As a threshold matter, the parties dispute whether these "prudence defendants" are entitled to the "presumption of prudence" that was adopted by the Ninth Circuit in Quan v. Computer Sciences Corp., 623 F.3d 870, 881 (9th Cir. 2010). The Quan court held that when "plan terms require or encourage the fiduciary to invest primarily in employer stock," any such investment is presumed to be prudent under ERISA. Id. To overcome that presumption, a plaintiff must "make allegations that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." Id. at 882. The Quan court specifically held that a plaintiff must do more than simply allege that the company's stock was not a "prudent" investment, or that defendants ignored a decline in stock price. Id. Instead, plaintiff must show "publicly known facts that would trigger the kind of careful and impartial investigation by a reasonable fiduciary that the plan's fiduciary

4

failed to perform." Id.  If, on the other hand, "there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from company stock, the abuse of discretion standard protects a fiduciary's choice not to divest."  Id.  Quan acknowledged that there is no bright-line rule about the kind of evidence needed to rebut the presumption of prudence, but held that "the burden to rebut the presumption varies directly with the strength of a plan's requirement that fiduciaries invest in employer stock."  Id. at 883.  If the plan terms "require or encourage" the fiduciary to invest primarily in employer stock, then the presumption serves as a "substantial shield" from liability.  Id. at 882.  But the more discretion the fiduciary has to invest in other holdings, "the more his decisions will be subject to judicial scrutiny."  Id. at 883.

Plaintiff disputes that Quan's presumption of prudence applies, arguing that the plan terms in this case do not actually "require or encourage" the fiduciary to invest primarily in Nokia stock, and instead are "ambiguous concerning the fiduciaries' authority."  While plaintiff concedes that the plan itself does state that Nokia stock "shall" be offered as an investment option, and may only be removed by amendment to the plan, plaintiff argues that this language was newly inserted in 2011, "apparently with the intent to take advantage of the presumption of prudence articulated by the Ninth Circuit in Quan." Dkt. 36 at 6, n.6.  Plaintiff then notes that the "trust agreement" between Nokia U.S. and the plan trustee, which is incorporated into the plan terms, imposes a duty to "continually monitor the suitability of acquiring and holding" Nokia stock.  See Complaint, ¶ 24.  Plaintiff thus argues that the trust agreement's language precludes the application of the presumption of prudence, and that the "normal prudent man standard" applies to defendants' investment decisions.

The court disagrees with plaintiff, and finds that the Quan presumption of prudence does apply in this case.  While the plan terms may very well have been amended, as plaintiff speculates, "with the intent to take advantage" of that presumption, defendants' motives in making that amendment are irrelevant to the court's analysis.  The court's review is limited to whether the terms themselves actually do "require or encourage" the fiduciaries

5

1 to invest primarily in Nokia stock.  And because those terms provide that the "plan shall
2 include the company stock fund," the court finds that they do "require or encourage"
3 investment in Nokia stock, thus triggering the presumption of prudence.  See also Taveras
4 v. UBS, 708 F.3d 436 (2d Cir. 2013) (finding the word "shall" to require fiduciary to offer
5 common stock); Rinehart v. Akers, 2013 WL 3491281 (2d Cir. July 15, 2013) (same);
6 compare with Harris v. Amgen, 717 F.3d 1042, 1053 (9th Cir. 2013) (finding that the word
7 "may" does not trigger the presumption).

       Despite arguing the presumption of prudence does not apply, plaintiff argues, in the alternative, that the complaint "allege[s] sufficient facts to overcome any presumption." Plaintiff notes that, under Quan, he must present allegations that either (1) clearly implicate the company's viability as an ongoing concern, or (2) show a precipitous decline in the employer's stock, combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement.  623 F.3d at 882.  Plaintiff does not specify which of these two prongs is satisfied by the complaint's allegations, and instead appears to proceed under both prongs - arguing that Nokia stock experienced a "precipitous decline," and also arguing that the "employer company's viability" was "credibly implicated."  The court will thus look at all of the factual allegations presented by plaintiff, and determine whether they satisfy either part of the Quan test.

       Plaintiff first points to the decline in Nokia's stock price that occurred after Apple's introduction of the iPhone in 2007.  However, plaintiff makes clear that he "has not alleged that Nokia's stock was an imprudent investment during the entire period of the company's decline."  Instead, plaintiff has limited the putative class period to January 19, 2012 to the present, arguing that "by the beginning of 2012," Nokia's decline was "so marked," and its financial position "so dire," that investment in company stock was imprudent.  Plaintiff argues that Nokia's stock price had dropped from $54, in 2007[2], to between $4-5 at the

---

[2] The court notes that plaintiff's figures appear to be inaccurate, as Nokia's highest stock price in 2007 was actually $42.44 (on November 7, 2007).  Not since 2000 has Nokia stock been priced at $54.

6

beginning of the class period – a decline of about 90 percent.  Nokia's stock price fell even further during the class period, to a low of $1.76, before climbing back to $3.48 during the briefing of this motion.  Plaintiff claims that this is "clearly evidence of a 'precipitous decline' in the price of the company stock."  Defendants, on the other hand, argue that only the stock price decline that occurred during the class period is relevant to the "prudence" analysis.  By defendants' logic, Nokia's stock price fell only 31 percent – from a class-period peak of $5.80 (on February 24, 2012) to a closing price of $3.98 at the time that the reply brief was filed – which is not a sufficiently "precipitous" decline to rebut the presumption of prudence.

        Neither party presents any binding authority regarding the relevant time period for assessing whether the stock price drop was "precipitous," and instead, both parties appear to be cherry-picking their dates.  Defendants would have the court ignore all stock price fluctuations that occurred before the first day of the class period.  But any assessment of whether investing in Nokia's stock was "prudent" as of January 19, 2012 would necessarily involve at least some consideration of historical data, as prudence is not determined in a vacuum.  However, plaintiff is also cherry-picking his dates, arguing that the court should look all the way back to the peak of Nokia's stock price, even though the putative class period did not begin until over four years later.  The court further notes that plaintiff appears to have strategically chosen the class period dates in order to avoid the holdings of the Southern District of New York and the Second Circuit (in a similar Nokia ERISA case), both of which found that investing in Nokia stock was not imprudent between September 2008 and September 2011 (when the case was dismissed).  <u>See</u> <u>In re Nokia ERISA Litigation</u>, 2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) (dismissing case for failure to state a claim for breach of the duty of prudence); <u>Majad ex rel. Nokia Retirement Sav. and Inv. Plan v. Nokia, Inc.</u>, 2013 WL 3111263 (2d Cir. 2013) (affirming dismissal).  His gamesmanship aside, plaintiff is permitted to argue that, even if investing in Nokia stock was prudent between 2008 and 2011 (as the Southern District and the Second Circuit found), it became imprudent as of January 2012.  And plaintiff is permitted to cite at least some pre-2012

7

evidence to support that argument.

However, limiting the putative class period to January 2012 onwards creates a different problem for plaintiff – the court must look only at whether investing in Nokia stock was prudent in or after January 2012, and no earlier.  And the court finds that, by January 2012, most of the damage had already been done to Nokia, and the company was already on the road to re-stabilizing itself.  As plaintiff points out, Nokia admittedly failed to adapt to changes in the cellular phone market that were brought about by the introduction of the iPhone in 2007.  It "missed big trends," and failed to introduce a smartphone that could compete with Apple and Android phones.  The February 2011 "burning platform" memo, quoted extensively in plaintiff's complaint, makes this same point – conceding that Nokia was "years behind" its competitors, and that it was "going to have to decide how [to] either build, catalyze, or join" a smartphone ecosystem.  Read carefully, the "burning platform" memo was not a warning that a strong company was about to collapse, it was an acknowledgment that the company was suffering and that changes were needed.  And indeed, later that same month (and critically, <u>before</u> the start of the class period), Nokia announced a partnership with Microsoft's Windows-based smartphone platform.  Thus, by January 2012, it was reasonable for the prudence defendants to view the Windows partnership as the correct response to the burning platform memo and as a signal that the worst was behind them, making it prudent to hold the company stock (rather than selling the stock at its near-low point).  Even if the court were to assume that the drop in Nokia's stock price was indeed "precipitous," plaintiff's allegations do not support the finding that Nokia was on the "brink of collapse" or "undergoing serious mismanagement" as of January 2012.  Nor do plaintiff's allegations support the finding that Nokia's viability was "clearly implicated" as of January 2012.  If anything, Nokia was in much more dire straits before the class period started, and by January 2012, had already taken steps to correct any previous "mismanagement."  While the effects of Nokia's failure to adapt were still being felt in 2012 (including the declining stock price, as well as falling earnings forecasts, a lowering of its bond rating, and job losses), it was not an abuse of discretion for the plan's fiduciaries to

view these effects as transition costs, and to believe that Nokia would re-stabilize itself after fully adopting the Windows platform.[3]

Quan is instructive here, as the plaintiffs in that case attempted to overcome the presumption of prudence by pointing to material weaknesses in the company's stock option and accounting practices, which led to a SEC inquiry and a one-day 12% drop in stock price. However, the Ninth Circuit held that the plaintiffs failed to overcome the presumption because it was not "unreasonable for the fiduciaries to believe that [the company] would overcome its problems." 623 F.3d at 884. Similarly, as of January 2012, it was not unreasonable for defendants to believe that Nokia would overcome its problems, and the court finds that plaintiff has not alleged sufficient facts to overcome the Quan presumption of prudence, under either prong of the test. Thus, defendants' motion to dismiss plaintiff's claim for breach of the duty of prudence is GRANTED. Plaintiff also asserts a claim for breach of the duty of loyalty, but defendants argue that this theory "hinges entirely" on the prudence-based allegations, and plaintiff does not challenge that argument, nor does he present any separate allegations regarding any loyalty breach. Thus, the court also GRANTS defendants' motion to dismiss plaintiff's claim for breach of the duty of loyalty, and DISMISSES plaintiff's first cause of action in its entirety. Because the court finds that the defects of the complaint cannot be cured by amendment, the dismissal is with prejudice.

Plaintiff's second cause of action is for "failure to monitor fiduciaries," and alleges that the "monitoring defendants" failed to ensure that the plan fiduciaries were aware of the risks of investing in Nokia stock, and failed to remove those fiduciaries after they continued to invest in Nokia stock. While plaintiff correctly argues that the duty to monitor is separate from the duty to prudently and loyally manage the plan assets, plaintiff has not alleged separate facts underlying this claim. Instead, the factual allegations supporting this cause

---

[3] In fact, on September 3, 2013, Nokia's phone business was purchased by Microsoft, and its stock jumped to over $6 per share. This latest development further undermines any claim by plaintiff that Nokia's viability was threatened, or that it was on the brink of collapse.

9

of action are indeed dependent on the prudence defendants' alleged failure to prudently and loyally manage the plan's assets.  For instance, the complaint alleges that the monitoring defendants breached their monitoring duties by "standing idly by as the plan suffered enormous losses as a result of their appointee's imprudent actions and inaction with respect to company stock," by "failing to ensure that the monitored fiduciaries appreciated the true extent of the risks of investing in the company stock," and by "failing to remove appointees whose performance was inadequate in that they continued to permit the plan to make and maintain investments in the company stock despite the practices that rendered company stock an imprudent investment during the class period." Complaint, ¶ 103. Essentially, plaintiff assumes a breach by the prudence defendants, then claims that any breach must have resulted from a failure to monitor.  Plaintiff does not present any specific facts regarding the monitoring process or how it was deficient.  In other words, while a "failure to monitor" claim will not always be dependent on a "failure to prudently/loyally manage" claim, plaintiff's complaint is pled in such a way that makes his "failure to monitor" claim so dependent.  Because the court has already found that plaintiff has failed to state a claim for failure to prudently/loyally manage the plan's assets, and because plaintiff alleges no new facts regarding the alleged failure to monitor, the court GRANTS defendants' motion to dismiss plaintiff's second cause of action.  And because the court finds that the defects of the complaint cannot be cured by amendment, the dismissal is with prejudice.

Finally, plaintiff's third cause of action is for co-fiduciary liability, and is necessarily dependent on at least one underlying breach of fiduciary duty.  Because the court has found that the complaint fails to state a claim for breach of the duties of prudence and loyalty, and fails to state a claim for breach of the duty to monitor, the court finds that defendant's motion to dismiss plaintiff's third cause of action must be GRANTED, and the claim is dismissed with prejudice.

Defendants' request for judicial notice is GRANTED as to exhibits 1-5, as the subject matter of those documents is referenced by the complaint, but DENIED as to exhibits 6-9.

**IT IS SO ORDERED.**

Dated: October 15, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California